## Lee v. Lee.

(Decided December 14, 1928.)

### Appeal from Edmonson Circuit Court.

1. Judgment.—Where parties agreed that cause should be submitted and judgment rendered nunc pro tunc, plaintiff could not complain that nunc pro tunc judgment signed by successor of judge trying case was irregular, where judgment was entered in conformity with former judge's opinion.

2. Judgment.—Where presiding judge rendered opinion favorable to defendant, together with judgment of dismissal which he failed to sign, his successor had authority to sign the judgment under Ky. Stats., sec. 977.

3. Trial.—Incompetency of evidence introduced in trial court must be regarded as waived, where no objection was interposed at time of its admission.

4. Evidence.—Where only portion of deed could be found, and no part of it had ever been recorded, parol evidence of witnesses concerning its contents was competent.

5. Evidence.—In action involving plaintiff's interest in land, notes executed by plaintiff in behalf of another, expressly stated to be in payment for conveyance of property, were persuasive evidence against him.

6. Partition.—Judgment dismissing plaintiff's claim of one-third interest in land was justified under conflicting evidence as to whether plaintiff's name appeared in the lost deed, and under evidence of plaintiff's delay for 29 years after becoming of age to have land partitioned and of notes executed by him in behalf of another expressly given in payment for the land.

7. Depositions.—Deposition does not have to be filed by order of court, and filing thereof in clerk's office is sufficient.

8. Continuance.—Refusal of continuance to give plaintiff in partition action opportunity for rebuttal testimony held not error, where defendant's deposition was on file for 10 days and no effort had been made to obtain material witness who had been in possession of deed claimed to contain plaintiff's name.

MILTON CLARK and CHAS. E. WHITTLE for appellant.

JOHN A. LOGAN, GEO. McCOMBS, J. E. RICHARDSON and J. WOOD VANCE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

From a judgment dismissing his petition, Lonnie Lee has prosecuted this appeal. This is the second time that this case has been before us. See Lee v. Lee, 215 Ky. 226, 284 S. W. 1052. Upon the former appeal we said that this case had been very meagerly prepared for trial, but held that it had had sufficient preparation to make out a prima facie case for Lonnie Lee, and that the court erred in dismissing his petition. He made no further preparation of his case. F. P. Lee did prepare his side of the case and filed the proof taken on his behalf on September 12, 1927. Plaintiff made no further effort to prepare his case, and, when the case came on for trial on November 26, 1927, he filed an affidavit for a continuance. The defendant admitted the statements contained in that affidavit, subject to competency, and it was agreed that the cause be submitted and that whatever judgment the court might render should be entered as of date November 26, 1927.

The judge took the papers home with him and subsequently sent to the clerk of the Edmonson circuit court an opinion which the clerk entered at large upon the order book, and immediately following that, wrote a judgment. The opinion is as follows:

"The court is of the opinion that Lonnie Lee's name was never in the deed in controversy, there-

fore he had no interest in the land, and if he did, he is barred by limitations to claim a one-third interest in the land.        "GILLIAM, Judge."

The judgment that was entered was:

"This action having been heard and submitted and the court being sufficiently advised, it is considered and adjudged by the court that the petition of the plaintiff be and the same is hereby dismissed. It is further considered and adjudged by the court that the defendant recover of the plaintiff their costs herein expended. To all of the foregoing judgment plaintiff excepts and prays an appeal to the Court of Appeals, which is granted."

Judge Gilliam did not sign this judgment. His term of office expired on December 31, 1927, but at the March term, 1928, the following matter was written at the foot of this judgment and signed by the then judge of the Edmonson circuit court:

"At the close of the March term, 1928, I sign the last day's orders of the November term, 1927, as succeeding judge of this court.
                "PORTER SIMS, Judge."

The principal part of the plaintiff's attack is directed to this judgment; it being his contention that Judge Sims had no authority to sign this document because he had not heard the case and that Judge Gilliam had not left sufficient memoranda of what he had done in the matter to enable Judge Sims to enter a judgment nunc pro tunc; but, when we consider this judgment in connection with the opinion rendered by Judge Gilliam, we find that the judgment entered merely carries out and puts into different form what was contained in the judge's opinion. Of course, the whole thing was irregular, but these parties made it so by agreeing that it might be done in this way, and, having so agreed, they cannot now complain because the court did proceed in just the manner that they had agreed he should proceed, and thus, in this irregular manner, this judgment was rendered and entered in every way in accordance with the agreement of these parties, and must be treated as a judgment rendered by Judge Gilliam, and left unfinished and unsigned.

By section 977, Kentucky Statutes, it was the duty of Judge Sims to sign any orders of court left unsigned by Judge Gilliam, and his action in signing this judgment is approved. It will be observed that Judge Gilliam in his opinion gave two reasons for denying Lonnie Lee the relief he is seeking. One was because the name of Lonnie Lee had never been in the deed in controversy and that therefore he had no interest in the land, and that part of his opinion we shall consider later.

The other was that, if he did have an interest in the land, it was barred by limitations, but there had been no plea of limitations, so that part of Judge Gilliam's opinion we will not consider. If the judgment appealed from cannot be sustained for other reasons, Lonnie Lee should succeed.

As stated in our former opinion, the foundation of the claim of Lonnie Lee was that on November 1, 1891, Ebenezer Davis and wife had executed a deed by which they conveyed jointly to J. J. Lee, Mattie J. Lee, and Lonnie Lee 85 acres of land in Edmonson county. According to the proof in the case, Lonnie Lee was then 19 years of age. His father, J. J. Lee, has been married three times. Lonnie Lee was a child of the first marriage, and we can understand that, as he was then almost a man, this deed might have been taken as he says, and that this interest might have been given him to induce him to remain with his father and stepmother, and help to pay for the land. We set forth in Guffy v. Gilliam, 213 Ky. 805, 281 S. W. 1024, the characteristics of some stepmothers, and Mattie J. Lee manifested about all of them. She and J. J. Lee had a very stormy married life, and finally separated. Her feelings toward Lonne Lee were very unkind, and, according to Lonnie Lee and J. J. Lee, his father, much of this was caused by the fact, so they say, that the name of Lonnie Lee was included in this deed.

To show that it was so included, the plaintiff gave his own deposition and took the depositions of his father, J. J. Lee, and his wife, Mary T. Lee, and his father-in-law, J. F. Lee.

It is argued here that Mary T. Lee was not a competent witness for her husband, Lonnie Lee; but we do not find in the record that any objection was interposed to her evidence in the lower court, and, unless her evidence was objected to, the incompetency of it must be

regarded as waived, and she and her husband and his father, J. J. Lee, all testified positively that Lonnie Lee's name was in this deed. The evidence of none of these witnesses regarding the contents of this deed would be competent if the deed itself in its entirety were in existence, but only a portion of the latter part of this can now be found, and no part of it has ever been recorded; therefore their evidence was competent.

The evidence of J. F. Lee was taken, and he testifies that this deed was read to him by his daughter, Mary T. Lee, and that the name of Lonnie Lee appeared in it. It is argued that this evidence was only hearsay and inadmissible, but the answer to that is that the record does not show it was objected to. To sustain the judgment rendered, we have the persuasive fact that Lonnie Lee became of age in 1893, and thus could then have instituted an action to have this land partitioned, and his part allotted him; yet he never did anything until December, 1922, 29 years thereafter. The staleness of his claim just stares at us when we read the record. Another fact that is rather persuasive to us is that this land was not paid for in cash, but notes were given for deferred payments, and seven of these notes are in the record. We have concluded to copy one of them.

> "$36.00. On or before the 15th day of November, 1893, I promise to pay Sara M. & E. Davis or order $36.00 for value received in land this day conveyed to me with legal interest thereon from this date until paid. This 1st day of November, 1891.
>
> "JOHN J. LEE by LONNIE LEE.
>
> "Attest: WILL TURLEY."

Lonnie Lee testified that he was able to read and write, and this note indicates that he was, because on that occasion he signed his father's name for him, and all the notes of this series are signed the same way. If he was able to read and write, he must have seen in these notes the statements, "land this day conveyed to me." If he had signed these notes as a maker, it would be very persuasive evidence in his behalf; but, from a reading of the note, it appears his only purpose in signing it was to indicate by whom it was that the name of John J. Lee had been subscribed, and the notes are persuasive evidence against him. Mattie J. Lee died in 1905, and a short time after her death, the interest of J. J. Lee in

this land was sold to pay for medical attention rendered Mattie J. Lee. It was purchased by John A. Logan, and by him conveyed to the defendant, F. P. Lee. In that action and in that deed, the interest of J. J. Lee was referred to as one-half interest; but, whether it was one-half or one-third, F. P. Lee acquired title thereby to the interest in this land that had formerly belonged to his father, J. J. Lee, and, upon the death of Mattie J. Lee, F. P. Lee, as one of her heirs, inherited a portion of her interest, and he purchased the remainder from her other heirs. It is admitted in this record that F. P. Lee is now the owner of whatever interest J. J. Lee and Mattie J. Lee formerly had. The question is, did they own it all, or did Lonnie Lee own one-third thereof? and that depends on whether or not the name of Lonnie Lee was in this deed.

F. P. Lee testified he saw the deed, and that it was not. W. A. Elliott, who had married a sister of F. P. Lee, testified that he saw the deed, and the name of Lonnie Lee was not in it. Mrs. Della Burnett, a sister of F. P. Lee, so testifies, and the same is true of another sister, Maude Elliott; and L. P. Dossy and Arthur Atwell testify that they heard the deed read and Lonnie Lee's name was not in it. Of course their evidence has but little weight, because they did not read it themselves, and it should have been excluded if there had been an objection interposed; but the same is true of the evidence of J. F. Lee for the plaintiff.

Lonnie Lee's chief contention here is that he should not have been forced into trial on November 26, 1927, but should have been given an opportunity to take certain evidence in rebuttal, and that is the only thing that has given us any trouble. He had shown no sort of diligence, however. F. P. Lee took his proof on June 14. It was taken in shorthand, and the notes were transcribed and the deposition filed in the clerk's office on September 12. That is all the filing that is required. A deposition does not have to be filed by an order of court. His counsel learned that these depositions were there on November 16. They had ten days then in which to take some steps to prepare the plaintiff's side of the case; yet they did nothing. The proof here is not satisfactory, because the witnesses testifying for the plaintiff say his name was in this deed. Those testifying for the defendant say it was not; yet both of these statements may be true, because the plaintiff and his witnesses testify that his

name had been erased from the deed, and thus, at the time the plaintiff's witnesses saw it, his name may have been there, and, at the time the witnesses for the defendant saw this deed, his name may have been erased; so the proof is by no means satisfactory.

It appears in this record that this deed was at one time in the possession of Samp Demunbrun, and that he had it for quite a period. It was shown that he is living; yet no effort was made to procure his evidence. It appears that this deed was written by O. P. Shackelford, and that he purchased the notes given for the deferred payments, and they were paid to him. It was shown that he is living; yet no effort was made to procure his evidence.

After reading the whole case, we are left in such doubt that we are unable to say the chancellor erred.

The judgment is affirmed.